IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ESTATE OF CHARLES WASDEN, by          :
through Executrix MYRTLEAN            :
WASDEN and MYRTLEAN WASDEN,           :
individually,                        :
                                     :
     Plaintiffs,                     :
                                     :
vs.                                  :        CIVIL NO. 13-00002-KD-B
                                     :
CITIZENS COMMUNICATIONS d/b/a         :
FRONTIER CORPORATION and/or          :
FRONTIER CORPORATION, *et al*.,       :
                                     :
     Defendants.                     :

## REPORT AND RECOMMENDATION

This action is before the Court on Defendants Prudential Insurance Company of America's Motion for Partial Dismissal (Doc. 13), Lincoln Life Insurance Company's Motion to Dismiss Plaintiffs' Complaint in Whole or in Part and Motion to Strike Plaintiffs' Claim for Extracontractual Damages and Jury Demand (Doc. 17), and Citizens Communications d/b/a/ Frontier Communications' Motion for Partial Dismissal and Motion to Strike Jury Demand (Doc. 23). Also pending before the Court is Plaintiffs' Motion to Remand (Doc. 27). The motions, which have all been fully briefed and are ripe for resolution, have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(3).

Upon consideration of all matters presented, the undersigned

RECOMMENDS, for the reasons stated herein, that Plaintiff's Motion to Remand be denied, that Defendants' Motions for Partial Dismissal be granted to the extent that Plaintiff's state law claims are preempted, that Defendant Lincoln Life Insurance Company's Motion to Dismiss for failure to state a claim be granted, and that Defendants' Motion to Strike Plaintiff's request for punitive damages and for a jury trial be granted.

### A. Background

Myrtlean Wasden commenced this action in the state court of Monroe County, Alabama as the Executrix of the Estate of Charles Wasden, and individually as a beneficiary under his life insurance policy.  Plaintiff alleges that her late husband, Charles Wasden, was a key employee of Monroeville Telephone Company Inc. for thirty-eight years, and that his employer provided him a $90,000 life insurance policy in recognition of his lengthy service to the Company. (Doc. 1-1 at 5).  According to Plaintiff, the terms of the life insurance policy were confirmed in a letter to Charles Wasden, which was dated March 4, 1998 and was written on "Frontier letterhead."  The letter reads in pertinent part as follows:

> Dear Charles Wasden:
>
> Our records show that as a retiree of Frontier Corporation you have $90,000 of term life insurance which will continue for your lifetime.

(Doc. 27-1).

According to the complaint, Charles Wasden relied on the policy in planning for his family's future, and Defendants or their predecessors never notified him of any change in the policy or benefits.  Charles Wasden died on June 14, 2011 and subsequent thereto, Plaintiff submitted a claim for payment of the $90,000 death benefit. (Doc. 1-1 at 6).  In a letter dated July 21, 2011, Plaintiff's request for $90,000 in coverage was denied.  In denying Plaintiff's claim, Frontier noted:

> At the time of Mr. Wasden's death, he was covered by the [Frontier Communications Corporation] Plan's Employee Term Life Coverage for Corporate Retired Employees.  The Certificate sets forth the eligibility and terms of this coverage. . . .
>
> You provided a letter send from Frontier to Mr. Wasden, dated March 4, 1998, and this letter states that life insurance coverage is $90,000 at that time (the "Letter").  Although the letter may have been correct in 1998, it is not currently effective and does not form the basis of Mr. Wasden's life insurance coverage. . . .
>
> [T]he wording of the Letter is not the plan document, summary plan description or other official insurance documentation and thus cannot change the terms of the coverage.  Further, even if we assume that the Letter does set forth the terms and conditions of the life insurance coverage, Frontier has reserved its right to change the terms of the coverage at any time. Therefore, as set forth in the Certificate, Mr. Wasden's life insurance coverage is for an amount of $10,000 and all claims for amounts greater than $10.000 are denied. Please note that this letter is not an approval of your life insurance claim for $10,000. As a beneficiary, you must first file a claim form

with Prudential, and Prudential will assess and pay the claim based on the terms of the beneficiary designation form on file.  If a valid form is not on file, Prudential will pay the claim based on the Certificate's default payment procedures.

ERISA APPEAL RIGHTS

You have the right to appeal this decision by submitting a written request for review to the Frontier Benefit Determination Review Team (the "Review Team") within 60 days of the date that this claim denial notice is received. . . .

(Doc. 31-1).

Plaintiff filed suit in the Circuit Court in Monroe County against Citizens Communications d/b/a Frontier Communications and/or Frontier Corporation, Prudential Insurance Company of America, the Lincoln National Life Insurance Company, and fictitious defendants. (Doc. 1-1).  In the complaint, Plaintiff asserts claims for breach of contract, bad faith, abnormal bad faith and fraudulent misrepresentation.  Plaintiff also asserts that her claims do not arise under ERISA; however, if they are found to arise under ERISA, she has been wrongfully denied benefits under ERISA. (Id.).

Prudential Insurance Company of America (hereinafter "Prudential") removed this action to federal court on January 2, 2013 and asserted that federal question jurisdiction exists under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Prudential asserts that this action is governed by ERISA because Plaintiff is claiming

that Defendants failed to pay benefits under a group life insurance plan sponsored by her late husband's former employer. Citizens Communications d/b/a Frontier Communications and/or Frontier Corporation (hereinafter "Frontier") [1] and Lincoln National Life Insurance (hereinafter "Lincoln") filed notices joining in and consenting to the removal. (Docs. 2, 21)

Defendants filed motions seeking the dismissal of Plaintiff's state law claims on the ground that they are completely preempted by ERISA. (Docs. 13, 17, 23). Lincoln also argues that Plaintiff has failed to state a claim against it; thus, it is entitled to judgment as a matter of law. (Doc. 17). Plaintiff, on February 1, 2013, filed a motion to remand on the ground that the claims asserted in her lawsuit do not arise under ERISA; thus, federal jurisdiction is lacking. (Doc. 27). On February 13, 2013, Frontier supplemented its notice joining in and consenting to removal, and asserted that in addition to federal question removal, this lawsuit is also removable pursuant to 28 U.S.C. § 1332 because there exists complete diversity of citizenship between Plaintiff and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interests and fees. 28 U.S.C. § 1332(a). (Doc. 35).

---

[1] Defendant Frontier Communications Corporation asserts that it has been incorrectly named in the complaint as "Citizens Communications d/b/a Frontier Communications or Frontier Corporation.

## B. **Analysis**

### 1.   **Motion to Remand**

Because Plaintiff's Motion to Remand raises a jurisdictional issue, the Court will turn first to that issue. See, e.g., Fields v. Travelers Indem. Co., 2008 U.S. Dist. LEXIS 41944 (M.D. Ala. May 28, 2008) ("Although the Motion to Dismiss was filed before the Motion to Remand, the court's analysis begins with the threshold jurisdictional question raised by the Motion to Remand. In the absence of federal jurisdiction, the court lacks the power to decide the Motion to Dismiss and must remand the action to state court without reaching the question of whether [the plaintiff] has failed to state a bad faith claim against [the defendant].").

It has long been recognized that federal courts are courts of limited jurisdiction. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). The burden of establishing subject matter jurisdiction for the purpose of a valid removal is squarely on the removing party. Friedman v. N.Y. Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir 2005) ("[I]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists.") (citation omitted). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. See

University of S. Ala. v. American Tobacco Co., 168 F.3d 405, 411 (llth Cir. 1999). "[T]here is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." Russell Corp. v. American Home Assur. Co., 264 F.3d 1040, 1050 (11th Cir. 2001).

As noted *supra*, Defendant Prudential removed this action on the basis of federal question jurisdiction.  Subsequent thereto, Frontier, which had joined in the removal, timely amended its joinder notice and asserted an additional basis for removal, namely diversity of citizenship under 28 U.S.C. § 1332.  Having reviewed Plaintiff's Complaint, and the parties' briefing on Plaintiff's Motion to Remand, the undersigned finds that diversity jurisdiction exists over this action.

### a. Citizenship

Where the alleged basis for federal jurisdiction is diversity under 28 U.S.C. § 1332, the removing defendant has the burden of demonstrating that there is (1) complete diversity of citizenship and (2) an amount-in-controversy greater than $75,000. See 28 U.S.C. § 1332(a).  In its supplemental notice, Frontier asserts, based upon information and belief, that Charles Wasden was a resident and citizen of Alabama at the time of his death, and that Plaintiff Mrs. Wasden is a resident and citizen of Alabama.  Frontier further asserts that it was

incorporated under the laws of the State of Delaware, and that
its principal place of business is in Stamford, Connecticut.  In
addition, Frontier asserts that the records on file with the
Alabama Secretary of State's Office reflect that Prudential was
incorporated in the state of New Jersey and has its principal
place of business in Newark, New Jersey, while Lincoln is
incorporated in the state of Indiana and has its principal place
of business in Fort Wayne, Indiana. (Doc. 35 at 2-3); See 28
U.S.C. § 1331(c)(1) [2] .  Plaintiff has not objected to, nor
contested Frontier's assertions regarding citizenship.  In fact,
Plaintiff acknowledges, in an affidavit filed with the Court,
that she resides in Monroe County, Alabama. (Doc. 27-1). The
undersigned thus finds that Plaintiff and Defendants are
citizens of different states.  Accordingly, complete diversity
of citizenship exists under § 1332(a).

   **b. Amount in controversy**

   The next question regarding diversity jurisdiction is
whether the amount in controversy has been satisfied.  Where a
plaintiff has made an unspecified demand for damages in state
court, a removing defendant must prove by a preponderance of the
evidence that the amount in controversy more likely than not

---

[2] §1332(c)(1) provides in pertinent part that " a corporation
shall be deemed to be a citizen of every State and foreign state
by which it has been incorporated and of the State or foreign
state where it has its principal place of business . . ."

exceeds the $75,000 jurisdictional requirement. Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1357 (11th Cir. 1996), overruled on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000). Because Plaintiff has made an unspecified demand for damages in this case, the Tapscott standard applies here.

"When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001). Although Plaintiff made an unspecified demand for damages in this case, it is facially apparent from a review of her complaint that she seeks more than $75,000 in damages. Plaintiff asserts that she is entitled to $90,000 in death benefits under her late husband's life insurance policy as well as punitive damages. Thus, the $75,000 amount in controversy has been meet. Because the parties' citizenship is diverse and the amount in controversy exceeds $75,000, the undersigned finds that diversity jurisdiction exists and therefore recommends that Plaintiff's Motion to Remand be denied.

### 2.   Motions to Dismiss

The Court turns next to Defendants' motions seeking the dismissal of Plaintiff's state law claims.  In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts the non-moving party's factual allegations as true. Erickson v. Pardus, 551 U.S. 89, 94 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).  Moreover, the rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In Ashcroft v. Iqbal, 556 U.S. 662, 678 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), the Supreme Court explained that while a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations in order to withstand attack, the complaint must however contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id., 556 U.S. at 678.

Typically, a court reviewing a motion to dismiss under rule 12(b)(6) is limited to the four corners of the complaint. See Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1329 n. 7 (11th Cir. 2006).  "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under [Fed. R. Civ. P.] 56." Fed. R. Civ. P. 12(d).  However, a district court may consider documents attached to a

motion to dismiss without converting the motion into a motion for summary judgment where, as here, the documents are central to the plaintiff's claim, and their authenticity is not challenged. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); Jordan v. Miami-Dade County, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006).  The parties have, without any objections, submitted various insurance related correspondence exchanged between the parties, and a Prudential insurance booklet, and the undersigned has reviewed and considered these documents because they are clearly central to Plaintiff's claims and no party has challenged their authenticity.

As noted *supra*, Defendants contend that Plaintiff's state law claims should be dismissed because they are completely preempted by ERISA.  Congress enacted ERISA to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113, 109 S. Ct. 948, 956, 103 L. Ed. 80 (1989).  ERISA governs employee welfare benefit programs provided by an employer. See 29 U.S.C. § 1001 et seq.  An employee benefit plan governed by ERISA is "any plan, fund or program . . . established or maintained by an employer" to provide benefits through an insurance policy. 29 U.S.C. § 1002(1); see Donovan v. Dillingham, 688 F.2d 1367, 1371 (11th Cir. 1982).

11

Under ERISA, "two different kinds" of preemption are recognized. Butero v. Royal Maccabees Life Insurance Co., 174 F.3d 1207, 1211 (llth Cir. 1999); see also Hardy v. Welch, 135 F. Supp. 2d 1171, 1178 (M.D. Ala. 2000) ("Preemption based on ERISA may take one of two forms."). The first form of ERISA preemption, known as 'complete preemption' "arises from Congress's creation of a comprehensive remedial scheme in 29 USC. § 1132 for loss or denial of employee benefits." Butero, 174 F.3d at 1211. The courts have held that "[w]hen Congress comprehensively occupies a field of law, 'any civil complaint raising this select group of claims is necessarily federal in character' and thus furnishes subject-matter jurisdiction under 28 U.S.C. § 1331". Id., 174 F.3d at 1211-1212. Where there is complete preemption, the state law claims are not dismissed, but are "recharacterize[d]. . . into a federal claim under § 1132."

The second type of ERISA preemption is referred to as "defensive preemption." See, e.g., Cotton v. Massachusetts Mutual Life Insurance Co., 402 F.3d 1267, 1281 (llth Cir. 2005). Defensive preemption is derived from ERISA's explicit preemption provision, 29 U.S.C. § 1144(a) [3]. Cotton, 402 F.3d at 1281. Pursuant to Section 1144(a), ERISA preempts any state law claim

---

[3] 29 U.S.C. 1144(a) provides in pertinent part that ERISA provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any [ERISA governed] employee benefit plan." 29 U.S.C. 1144(a)

relating to an employee benefit plan covered by ERISA. 29 U.S.
C. § 1144. The Eleventh Circuit has held that "[a] party's state
law claim 'relates to' an ERISA benefit plan for purposes of
ERISA preemption whenever the alleged conduct at issue is
intertwined with the refusal to pay benefits." Garren v. John
Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997).
"[Defensive] preemption may be invoked in both state and federal
court as an affirmative defense to the allegations in a
plaintiff's complaint." Stern v. International Business Machines
Corp., 326 F.3d 1367, 1371 (11th Cir. 2003). However, defensive
preemption does not furnish the basis for federal question
jurisdiction.  When defensive preemption is found, the state
claims must be dismissed. Butero, 174 F.3d at 1212.

      In this case, Defendants assert complete preemption; thus,
the court need not reach the issue of defensive preemption.  In
order for a plaintiff's state-law claim to be completely
preempted by ERISA, the following four elements must be
satisfied: "(1) There must be a relevant ERISA plan; (2) the
plaintiff must have standing to sue under that plan; (3) the
defendant must be an ERISA entity; and (4) the complaint must
seek compensatory relief akin to that available under § 1132(a),
which is normally a claim for benefits under the plan." Jones,
547 F.3d at 1178; see also Butero, 174 F.3d at 1212.

      Defendants contend that all four elements have been met,

whereas Plaintiff disputes the existence of a relevant ERISA plan. An employee welfare benefit plan governed by ERISA is established if the following criteria are satisfied: "(1) a plan, fund or program (2) that has been established or maintained (3) by the employer (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries." Moorman v. UnumProvident Corp., 464 F.3d 1260, 1269 (11th Cir. 2006); Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1345 (11th Cir. 1994). The Eleventh Circuit has observed that "[a] 'plan, fund or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Williams v. Wright, 927 F.2d 1540, 1543 (11th Cir. 1991) (citation omitted).

As best the Court can determine, during his life, Charles Wasden was covered under at least two different life insurance policies that were procured by his employer[4]. (Doc. 38-1, 40-1).

---

[4] There is also evidence, as pointed out in Plaintiff's Supplemental filing, that at some point, a third insurance policy was in existence. (Doc. 48-2 at 5). The insurance schedule reflects the this third policy, in the amount of

Defendant Frontier has produced documents that reflect that in 1991, its predecessor, Monroeville Telephone Company had in place a group life insurance plan that was secured through its carrier, Principal Mutual Life Insurance Company, and it provided $90,000 life insurance coverage for Charles Wasden, Plaintiff's late husband.  In support of their contention that the instant dispute involves an ERISA plan, Frontier has submitted the declaration of Robert K. Haderlein and a letter dated July 25, 1991 from Robyn Biehl of Principal Mutual Life Insurance Company to Helen Gayle Kennedy of Monroeville Telephone Company.  The letter reads as follows:

> In accordance with the policy terms, Mr. Wasden's life insurance in the amount of $90,000 will continue in force without further premium payment as long as total disability continues . . . The life insurance benefit will reduce in accordance with the following schedule:

| DATE | Amount of Life Insurance |
|------|--------------------------|
| February 10, 1996 | $67,500.00 |
| February 10, 2001 | 0.00 |

> According to our records, the current beneficiary is Myrtlean M. Wasden, wife. . . Please forward the enclosed copy of this letter to your employee.

---

$100,000 was issued through TransAmerica Life Insurance Co., and it listed Mr. Wasden's employer as both the owner and beneficiary of the policy.  Thus, while Plaintiff is correct that the TransAmerica Life Insurance policy was not part of an employee benefits plan, that is of no moment given that Plaintiff was not listed as the beneficiary under the policy.

> Because this benefit is provided as part of the
> group policy, no individual policy will be entered.
> Therefore, we suggest this letter be placed with
> his valuable papers.  It will serve as a record of
> continued life insurance coverage subject to the
> terms of the group policy.

(Doc. 40-1 at 6).

The record also reflects that in 2007, Defendant Prudential issued group life insurance coverage to Frontier, and under the group policy, Mr. Charles Wasden, as a retired corporate employee of Citizens Communications d/b/a Frontier Communications, was provided $10,000 of life insurance.  (Docs. 31-1; 38-1).  While Plaintiff contends that the policies at issue do not constitute ERISA plans, the undisputed record evidence reflects otherwise.

There is no question that Frontier secured and maintained the policies in order to provide death benefits for its employees, and former employees, like Charles Wasden.  While Plaintiff argues that in Frontier's letter denying her claim for $90,000 in death benefits, "Defendants collectively" denied that the benefits described in Frontier's March 1998 letter were part of a plan subject to ERISA, this assertion is not borne out by a review of Frontier's July 21, 2011 letter denying Plaintiff's claim. (Doc. 31-1).  Simply put, the letter does not deny that the policy at issue constituted a plan covered under ERISA. (Id.).  Instead, in the letter denying Plaintiff's claim for

$90,000 in coverage, Frontier set forth its position that the March 1998 letter, which forms the basis of Plaintiff's claim, does not constitute the plan document, summary plan description of other official insurance documentation. (Id.). Frontier further asserted that it retained the right to change the policy, and the Prudential policy in effect a the time of Mr. Wasden's death provided for $10,000 in coverage. (Id.). Frontier also expressly advised Plaintiff of her rights to appeal under ERISA. (Id.).

Accordingly, based on the record before the Court, the undersigned finds that it is clear that both the $90,000 life insurance policy referenced in Frontier's March 1998 letter and the $10,000 Prudential life insurance policy qualify as ERISA plans because a reasonable person can ascertain the intended benefits, $90,000 and $10,000 respectively, a class of beneficiaries, employees of Frontier and their beneficiaries, the source of financing, the employer paid the premiums for retirees, and procedures for receiving benefits", namely by contacting the employer or the insurance company.

With respect to the remaining Butero elements, Plaintiff has not contested Defendants' assertions that they have been established. Indeed, there is no question that as named beneficiary and executrix of the estate of Charles Wasden, Plaintiff has standing to sue under the policies, that as

Charles Wasden's former employer, Frontier, and as the administer of the $10,000 policy, Prudential, constitute ERISA entities, and that Plaintiff's claim for $90,000 in death benefits is akin to relief that is available under § 1132(a). Jones, 547 F.3d at 1178.  Accordingly, the undersigned finds that ERISA governs the plans in question and as a result, federal question exists over Plaintiff's claims.

The court notes that, in addition to asserting breach of contract and bad faith claims relating to the $90,000 life insurance policy, Plaintiff has also asserted a fraudulent misrepresentation claim based on Frontier's assertions in the March 1998 letter to Charles Wasden.  However, ERISA case law is clear that such claims fall within ERISA preemption. See Fetterhoff v. Liberty Life Assur. Co., 282 Fed. App'x 740, 743 (11th Cir. 2008) (holding that any state-law claim of bad faith or breach of contract was completely preempted by ERISA.); Anderson v. UNUM Provident Corp., 369 F.3d 1257, 1268-69 (11th Cir. 2004) (affirming district court's grant of summary judgment, finding that state law claims of fraud, suppression, bad faith and breach of contract are preempted by ERISA).  Thus, Plaintiff's state law claims must be converted to ERISA claims. Englehardt, 139 F.3d at 1353; accord Ervast v. Flexible Products Co., 346 F.3d 1007, 1014 (11th Cir. 2003); Karns v. Disability Reinsurance Mgmt. Servs., 879 F. Supp. 2d 1294, 1297 (N.D. Ala.

July 19, 2012) (recharacterizes the state law claim into a federal claim under 29 U.S.C. Section 1331). Therefore, Defendants' Motion To Dismiss is due to be granted to the extent that Plaintiff should be required to recharacterize her state law claims into ERISA claims.

### 3.   Extra-contractual Damages

Defendants also seek the dismissal of Plaintiff's request for extra-contractual damages. (Docs. 17, 23). This request is due to be due to be granted because claims for extra-contractual damages are barred under ERISA. Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 145, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985) (holding extra-contractual and punitive damages not available under ERISA.); Godfrey v. BellSouth Telecoms., Inc., 89 F.3d 755, 761 (llth Cir. 1996); ("In Bishop v. Osborn Transportation, Inc., 838 F.2d 1173 (llth Cir. 1998) . . . this Court held that ERISA . . . do[es] not provide for extra-contractual or punitive damages."). Accordingly, Plaintiff's relief is limited to the relief accorded by ERISA: benefits due under the former employer's employee welfare plan, a declaratory judgment on entitlement to those benefits, or an injunction against the plan administrator for refusal to pay her benefits.

### 4.   Jury Trial

Defendants also seek to strike Plaintiff's claim for a jury trial. Trial by jury is not available in ERISA cases because

they are equitable in nature. Stewart v. KHD Deutz of Am. Corp., 75 F.3d 1522, 1527 (11th Cir. 1996); Rolland v. Textron, Inc., 300 F. App'x 635, 636 (11th Cir. 2008) ("It is well-settled that plaintiffs bringing ERISA claims are not entitled to jury trials under ERISA because such claims are equitable in nature."); Broaddus v. Florida Power Corp., 145 F.3d 1283, 1287 n.2. (11th Cir. 1998) (affirming striking of plaintiff's demand for a jury trial on ERISA claim).   Accordingly, Plaintiff's demand for trial by jury is due to be stricken.

### 5.  Claims Against Lincoln

Finally, the undersigned observes that the record is devoid of any factual allegations relating to Defendant Lincoln.  The record evidence reflects that the Principal Financial Group issued to Charles Wasden, through his employer's group life policy, a $90,000 life insurance policy, on which Plaintiff was named as the beneficiary, and that Prudential issued to Charles Wasden, through his employer's group life insurance policy, a $10,000 life insurance policy.  There is absolutely no factual allegation, let alone any evidence, that Lincoln ever contracted to provide life insurance for Charles Wasden, or that it had any involvement in the issuance of any life insurance for Charles Wasden.  In the absence of any factual assertions or evidence suggesting that Lincoln was involved in securing or issuing life insurance for Charles Wasden, Plaintiff's claims against Lincoln

are due to be dismissed. Iqbal, 556 U.S. at 678 (complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

### C. Conclusion

For the reasons set forth above, the undersigned recommends that:

Defendants Motions to Dismiss (Docs. 13, 17, 23) be granted to the extent that Plaintiff's state law claims are preempted, and that Plaintiff be granted leave to amend her complaint;

Defendants' Motion to Strike Plaintiff's claim for extra-contractual damages and a jury trial (Docs. 17, 23) be granted; and

Defendant Lincoln's Motion to Dismiss (Doc. 17) for failure to state a claim be granted.

The attached sheet contains important information regarding objections to this recommendation.

**DONE** this **19th** day of **April, 2013.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   **Objection**.   Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.   Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[5] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments

---

[5] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed. R. Civ. P. 72(b)(2).

that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within fourteen (14) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.